UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,    :

                Plaintiff,    :    01 Civ. 9056 (DAB) (AJP)

         -against-    :    **REPORT AND RECOMMENDATION**

EDWARD A. DURANTE,    :

               Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Deborah A. Batts, United States District Judge:**

        This case arose from Edward A. Durante's fraudulent scheme to manipulate the public market for Wamex Holdings' stock in violation of federal securities laws.  On October 10, 2002, the Court entered a default judgment against Durante, ordering that Durante pay disgorgement and prejudgment interest in the amount of $39,880,680.86.  (Dkt. No. 59: 10/10/02 Judgment.) Presently before the Court is the November 8, 2013 motion of the Securities and Exchange Commission ("SEC") to hold Durante in civil contempt for failing to pay the ordered disgorgement. (Dkt. No. 250: SEC 11/8/13 Contempt Mot.)  The motion alleges "a clear and concerted effort [by Durante] to escape paying the outstanding Judgment amount despite having the ability and obligation to pay the same, in part or in whole."  (SEC 11/8/13 Contempt Mot. ¶ 8.)

        The SEC asks this Court to exercise its broad power to enforce compliance with the October 2002 judgment by incarcerating Durante until he (1) makes a meaningful payment towards his disgorgement obligation and (2) provides a complete and accurate accounting of his assets and income.  (SEC 11/8/13 Contempt Mot. at p. 6.)  Additionally, the SEC seeks an adverse inference

for each question that Durante's wife, Svetlana, refused to answer in a deposition through invocation of her Fifth Amendment privilege.  (SEC 11/8/13 Contempt Mot. at p. 6.)

In response, Durante asserts that the SEC's motion is barred by the equitable defenses of laches, waiver, estoppel and unclean hands.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 1, 14-20.)  Alternatively, Durante seeks relief via a cross-motion to modify the judgment pursuant to Federal Rule of Civil Procedure 60(b)(5)-(6) claiming that (1) the judgment was actually satisfied by Durante's disgorgement of gains prior to 2002 or (2) the judgment should be deemed satisfied because it is no longer equitable to require Durante to make additional payments.  (Durante 11/26/13 Opp. Br. at 27-28.)

For the reasons set forth below, the SEC's motion to hold Durante in civil contempt should be <u>GRANTED</u> and Durante's cross-motion to modify the judgment should be <u>DENIED</u>.

## FACTS

### Background

On October 11, 2001, the SEC commenced this action against Durante for engaging in a fraudulent scheme to manipulate the public market for stock of Wamex Holdings, Inc., in violation of federal securities laws.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 3; <u>see</u> Dkt. No. 1: SEC Compl.)  On December 7, 2001, Durante plead guilty in a related criminal action and entered into a cooperation agreement with the government, which required that he assign certain assets to the government for purposes of forfeiture, disgorgement, and restitution.  (Durante 11/26/13 Opp. Br. at 4; Dkt. No. 252: SEC Br. at 1-2.)  On February 15, 2002, the cooperation agreement was rescinded because Durante committed another securities violation, Durante's bail was revoked and he was incarcerated.  (Dkt. No. 260: SEC Reply Br. at 4; Durante 11/26/13 Opp. Br. at 6.)

On October 10, 2002, the District Court entered a default judgment against Durante

requiring that he pay disgorgement and prejudgment interest totaling $39,880,680.86.  (Dkt. No. 59: 10/10/02 Judgment at 9.)[1]  The Judgment further stated:

> [T]hat Defendant[] Edward A. Durante . . . shall: (a) make the payments Ordered by paragraphs VII and VIII of this Partial Judgment within ten days of entry of this Partial Judgment to the Clerk of this Court, together with a letter specifying that payment is made pursuant to this Partial Judgment; and (b) simultaneously transmit photocopies of such payment and letter to the SEC's counsel in this action.

(10/10/02 Judgment at 10.)  On September 26, 2003, in the criminal case, Durante was sentenced to 121-months imprisonment followed by three years supervised release.  (Durante 11/26/13 Opp. Br. at 8.)

In July 2004 and January 2005, the SEC deposed Durante.  (SEC Br. at 2; Durante 11/26/13 Opp. Br. at 9; Dkt. No. 261: Schultze Reply Aff. Ex. 2: Durante 7/04 Dep.)[2]  Durante explained the steps taken to liquidate his assets prior to his incarceration:

> Q.    Can you tell me what you remember either by, as specific as you can but kind of a category of documents that you turned over to the Government?
>
> A.    Yes. . . . At some point the Government asked me to marshal all my assets and paperwork regarding all the transactions I had been involved in and I complied with those wishes, marshaling assets, sending documents out to brokerage firms to retrieve securities and/or cash, liquidating certain items and assembling paperwork . . . .
>
> . . . .
>
> Q.    After you liquidated [the relevant assets], where did the money go?

---

[1]    This amount includes $33,783,565.26 in disgorgement and $6,097,115.60 in pre-judgment interest.  (10/10/02 Judgment at 9.)

[2]    Durante disputes the SEC's offered purpose for these depositions.  Durante claims the depositions were taken in connection with the SEC's ongoing proceedings against other individuals connected to Durante's fraudulent conduct.  (Durante 11/26/13 Opp. Br. at 9.) The SEC claims they were "attempting to ascertain assets available to satisfy the Judgment." (SEC Br. at 2.)

A.      It went in my attorney Randy [Zelin's] account and in some cases it went into the brokerage accounts and sat there . . . .

Q.      Well, after it went into the brokerage account or it went into . . . your lawyer's account, at some point in time did it end up in the Government['s] account?

A.      I think a lot of the assets are still sitting in whatever accounts they were in.

. . . .

Q.      What's your understanding of what's eventually supposed to happen with those funds?

A.      That's a good question.  I'm not sure that the Government and the other Governmental agencies know or agree on that at this point.

(Durante 7/04 Dep. at 279-80; Durante 11/26/13 Opp. Br. at 9-10.)  When asked by the SEC about the asset liquidation, Durante explained that by the time he plead guilty, he had control over less than $100,000 in assets.  (Durante 11/26/13 Opp. Br. at 11.)

On December 16, 2008, Judge Batts authorized acceptance of a wire transfer of $14,256,179.00 related to a Canadian litigation entitled British Columbia Securities Comm'n v. Berkshire Capital Partners, Inc., to be applied toward Durante's disgorgement obligation.  (Dkt. No. 120: 12/16/08 Order.)  On June 9, 2009, Durante was released from prison.  (SEC Br. at 3.)

**Efforts to Collect the Outstanding Judgment**

On June 23, 2011, the SEC sent Durante a demand for payment of the outstanding judgment balance of $25,561,334.39.  (Dkt. No. 251: Schultze 11/8/13 Aff. Ex. 1: 6/23/11 SEC Demand Letter.)  On August 15, 2011, Durante completed the SEC Statement of Financial Condition, listing $35,000 in assets and $235,000 in liabilities. (Dkt. No. 167: Schultze 1/16/13 Aff. Ex. H: Durante 8/5/11 SEC Stmt. of Fin. Condition; Schultze 11/8/13 Aff. ¶ 27 & Ex. 26.)

On November 9, 2011, the SEC served Durante with interrogatories and requests for

production, seeking information concerning Durante's current finances.  (Schultze 11/8/13 Aff. ¶ 6 & Exs. 3-4: 11/9/11 Interrogatories & Request for Production.)  The interrogatories sought, in part, information regarding "source[s] of income received" by Durante and his spouse, assets owned by Durante and his spouse, and "accounts subject to [Durante's] control."  (11/9/11 Interrogatories ¶¶ 4-6.)  Durante replied that his income "is approximately $50k per year since 2009," that he has "one bank account," and that he has "no other assets as the Federal Government seized all assets held by [Durante] in 2002-present." (Schultze 11/8/13 Aff. Ex. 6: Durante 11/9/11 Interrogatory Responses ¶¶ 4-5.)  The requests for production sought financial statements, financial disclosures, and federal and state personal and corporate income tax returns for the years 2007 to the present.  (11/9/11 Requests for Production ¶¶ 1, 3-6.)  In response, Durante provided only his 2010 Form 1040 Federal Tax Return, showing income of $52,000, and eight pages of his forty-one page apartment lease agreement.  (See Schultze 11/8/13 Aff. ¶ 7 & Ex. 5: Durante First Production Responses.)[3]

The SEC deposed Durante on October 2, 2012, questioning him about his current employment, credit card expenses incurred while traveling abroad, apartment lease, and relationship with Zenith Estates and New Market Enterprises.  (Schultze 11/8/13 Aff. ¶ 5 & Ex. 2: Durante 10/2/12 Dep.)  Durante exercised his Fifth Amendment privilege, fearing that his probation officer would seek imprisonment if he answered the questions.  (Durante 11/26/13 Opp. Br. at 13; see, e.g., Durante 10/2/12 Dep. at 62-63, 87, 90-91, 96, 105-06, 137-39.)  On November 26, 2012, Durante completed his term of supervised release.  (Dkt. No. 180: Durante 3/4/13 Opp. Br. at 2.)

---

[3]   In response to a subpoena issued on December 5, 2011, Silverstein Properties, Inc., provided the complete 41-page lease agreement for Durante's Manhattan apartment.  (Schultze 11/8/13 Aff. ¶ 9 & Ex. 7: Durante Lease Application.)  The SEC submitted to the Court the page where Durante listed his income at $390,000 (id.), well above the $52,000 amount listed on his federal income tax return.  The page with the $390,000 income information was not provided by Durante.

On January 16, 2013, the SEC moved to hold Durante in contempt.  (Dkt. No. 166: SEC 1/16/13 Contempt Mot.)  This Court held a conference on May 31, 2013 and denied the motion without prejudice to its renewal after further discovery as to Durante's assets.  (Dkt. No. 195: 5/31/13 Order Denying Motion; Dkt. No. 200: 5/31/13 Conf. Tr. at 22.)

**Additional Discovery**

On June 7, 2013, the SEC served Durante with updated discovery requests, seeking largely the same information as the initial requests.  (Dkt. No. 251: Schultze 11/8/13 Aff. ¶ 11 & Exs. 9-10: 6/7/13 Interrogatories & Requests for Production.)  In response to twenty-two document requests, Durante provided only a copy of his passport and a copy of his apartment lease renewal agreement.  (Schultze 11/8/13 Aff. ¶ 13 & Ex. 12: Durante 7/8/13 Interrogatory & Requests for Production Responses at 12-22, 23-24.)   After a threat of sanctions from this Court, Durante provided incomplete federal and state  tax returns, a copy of Svetlana Durante's passport, and incomplete bank statements and incomplete federal tax returns for Svetlana.  (See Schultze 11/8/13 Aff. ¶ 14 & Exs. 13(a)-(h).)

On August 13, 2013, the SEC again deposed Durante.  (Schultze 11/8/13 Aff. ¶ 10 & Ex. 8: Durante 8/13/13 Dep.)  Durante explained that his living expenses are funded by Kenneth Wise, and that Wise's corporations, Zenith Estates and New Market Enterprises, fund Durante's lifestyle, including $17,000 in bills at Bloomingdale's and Bergdorf Goodman, college tuition for his children, a Porsche Cayenne for his wife, and lavish trips to Europe.  (Durante 8/13/13 Dep. at 38-41, 147, 155, 180-82, 190, 246; see also Schultze 11/8/13 Aff. Ex. 15: Summary of Durante Credit Card Sub-Accounts at 2.)  Durante testified that Wise's generosity stems from friendship, and that Wise visited Durante in prison to "see how he could help [Durante] when [he] came out." (Durante 8/13/13 Dep. at 41.)  Durante further testified that he liquidated and transferred over $35

million in assets to his prior attorney for satisfaction of the judgment.  (Durante 8/13/13 Dep. at 90-91.)  However, Durante cannot show where that money eventually went nor has he taken any steps to recover it from his prior attorney.  (Durante 8/13/13 Dep. at 101-04.)

Additionally, Durante testified that he falsified his apartment lease application at the direction of his real estate agent (Durante 8/13/13 Dep. at 143-44), pooled funds in a Canadian bank account to shield them from potential creditors (id. at 71-72), and collaborated with his former attorneys to ensure Durante received a portion of inflated legal fees paid to he former counsel (id. at 136-37).

Svetlana Durante was deposed on October 29, 2013.  (Schultze 11/8/13 Aff. Ex. 11: S. Durante Dep.)  Svetlana asserted her Fifth Amendment privilege to nearly every question asked, most notably about the substantial money the Durantes received from Ken Wise and his various corporations.  (See, e.g., Schultze 11/8/13 Aff. ¶ 12 & Ex. 11: S. Durante Dep. at 30, 37, 42, 44, 46.)

On November 8, 2013, the SEC filed the present motion to hold Durante in contempt for failure to pay his disgorgement obligation.  (Dkt. No. 250: SEC Contempt Mot.)

## ANALYSIS

### I.    LEGAL STANDARD

#### A.    Civil Contempt

It is well-established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt."  Spallone v. United States, 493 U.S. 265, 276, 110 S. Ct. 625, 632 (1990) (quotations omitted); see 18 U.S.C. § 401 (authorizing courts "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience

or resistance to its lawful writ, process, order, rule, decree, or command").[4/]  "The purpose of civil contempt is remedial and coercive[.]"  United States v. Twentieth Century Fox Film Corp., 882 F.2d 656, 661 (2d Cir. 1989), cert. denied, 493 U.S. 1021, 110 S. Ct. 722 (1990); see, e.g., SEC v. Aragon Capital Advisors, LLC, 07 Civ. 919, 2011 WL 3278907 at *8 (S.D.N.Y. July 26, 2011).  That is to say, the purpose of civil contempt "is to compel a reluctant party to do what a court requires of him." Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986), cert. denied, 479 U.S. 1067, 107 S. Ct. 955 (1987).

As the Second Circuit has noted, "a contempt order is a 'potent weapon' that is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y., 558 F.3d 159, 164 (2d Cir. 2009) (citation omitted).[5/]  Therefore, a "'contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict.'" Latino

---

[4/]  See also, e.g.,  Close-Up Int'l, Inc. v. Berov, 474 F. App'x 790, 793 (2d Cir. 2012); S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010); City of N.Y. v. Venkataram, 06 Civ. 6578, 2012 WL 2921876 at *3 (S.D.N.Y. July 18, 2012).

[5/]  Accord, e.g., Gucci Am., Inc. v. Weixing Li, 10 Civ. 4974, 2012 WL 5992142 at *3 (S.D.N.Y. Nov. 15, 2012); Bd. of Trs. of Local 295/Local 851 - I.B.T. Emp'r Grp. Pension Trust Fund v. Hail Air Freight, Inc., 06 Civ. 528, 2008 WL 1758719 at *3 (S.D.N.Y. Apr. 16, 2008) (Lynch, D.J.) (contempt not warranted  where "there is 'a fair ground of doubt as to the wrongfulness' of the Companies' conduct."); Panix Promotions, Ltd. v. Lewis, 01 Civ. 2709, 2004 WL 421937 at *7 (S.D.N.Y. Mar. 5, 2004) ("The civil contempt power is an extreme remedy and indeed a 'potent weapon,' and therefore should not be utilized 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (citations omitted)); Stein Indus., Inc. v. Jarco Indus., Inc., 33 F. Supp. 2d 163, 170 (E.D.N.Y. 1999) ("The contempt power is a grave responsibility and a 'potent weapon,' which should not be used 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (citation omitted)).

Officers Ass'n City of N.Y., Inc. v. City of N.Y., 558 F.3d at 164 (citation omitted).[6] "Specifically, the 'movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Latino Officers Ass'n City of N.Y., Inc. v. City of N.Y., 558 F.3d at 164.[7]

## II.    DURANTE SHOULD BE HELD IN CIVIL CONTEMPT

### A.    The Court's Order was Clear and Unambiguous

"'A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 145 (2d Cir. 2010) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).[8] Thus, a clear and unambiguous order will be "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir.1989) (quotations omitted), cert. denied, 495 U.S. 947, 110 S. Ct. 2206 (1990).

---

[6]    Accord, e.g., Gucci Am., Inc. v. Weixing Li, 2012 WL 5992142 at *3 (applying the clear and convincing evidence standard because of the severe nature of a contempt order); In re Chevron Corp., 736 F. Supp. 2d 773, 789 (S.D.N.Y. 2010); Cordius Trust v. Kummerfeld, 99 Civ. 3200, 2009 WL 3416235 at *6 (S.D.N.Y. Oct. 23, 2009); Maxwell v. N.Y. Univ., 08 Civ. 3583, 2009 WL 1576295 at *4 (S.D.N.Y. June 1, 2009), aff'd, 407 F. App'x 524 (2d Cir. 2010).

[7]    Accord, e.g., DeWitt Stern Grp., Inc. v. Eisenberg, 13 Civ. 3060, 2013 WL 5815512 at *4 (S.D.N.Y. Oct. 29, 2013); Cordius Trust v. Kummerfeld, 2009 WL 3416235 at *6; Maxwell v. N.Y. Univ., 2009 WL 1576295 at *4; Atl. Recording Corp. v. BCD Music Grp., Inc., 08 Civ. 5201, 2009 WL 1390848 at *7 (S.D.N.Y. May 7, 2009).

[8]    Accord, e.g., Alston v. Select Garages LLC, 12 Civ. 1459, 2013 WL 3357172 at *2 (S.D.N.Y. July 3, 2013); Gucci Am., Inc. v. Weixing Li, 10 Civ. 4974, 2012 WL 5992142 at *4 (S.D.N.Y. Nov. 15, 2012); City of N.Y. v. Venkataram, 06 Civ. 6578, 2012 WL 2921876 at *3 (S.D.N.Y. July 18, 2012).

The disgorgement judgment entered on October 10, 2002 is consistent with disgorgement orders that courts in this circuit have adjudged "clear and unambiguous." Compare, e.g., SEC v. Zubkis, 97 Civ. 8086, 2003 WL 22118978 at *3-4 (S.D.N.Y. Sept. 11, 2003), with Dkt. No. 59: 10/10/02 Judgment at 9-10;[9/] see also, e.g., SEC v. Pittsford Capital Income Partners, LLC,

---

[9/] The Zubkis judgment was as follows:

> IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that Zubkis disgorge $12,544,313.25, representing the amounts received by him from the sale of securities of the defendant . . . in violation of the federal securities laws as described in the Complaint, together with prejudgment interest of $9,034,418.14, for a total of $21,578,731.39. Zubkis shall be jointly and severally liable for a total of $7,038,901.53 of this amount together with the defendant Z-3 Capital Corporation. Zubkis shall, within thirty (30) days of the entry of this Final Judgment pay disgorgement and prejudgment interest in the total amount of $21,578,731.39 to the United States Treasury. Such payment shall be (A) made by United States postal money order, certified check, bank cashier's check, or bank money order; (B) be made payable to the Securities and Exchange Commission; (C) be hand delivered or mailed to the Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop O-3, Alexandria, Virginia 22312; and (D) submitted under cover letter that identifies Zubkis as a defendant in this action, the caption and docket number of this action, and a copy of which cover letter and payment shall be sent to Wayne M. Carlin, Regional Director, Securities and Exchange Commission, Northeast Regional Office, 7 World Trade Center, 13th Floor, New York, New York 10048.

SEC v. Zubkis, 2003 WL 22118978 at *3. Similarly, the judgment against Durante stated:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that . . .

> A. Defendant Edward A. Durante shall pay $39,880,680.86, jointly and severally with [other defendants], representing disgorgement of $33,783,565.26 and pre-judgment interest in the amount of $6,097,115.60.

> . . . .

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant[] Edward A. Durante . . . shall: (a) make the payments Ordered by paragraphs VII and VIII of this Partial Judgment within ten days of entry of this Partial Judgment to the
> (continued...)

No. 06 Civ. 6353, 2010 WL 2025500 at *1, *4 (W.D.N.Y. May 20, 2010) ("The Final Judgment . . . ordered that both defendants are jointly and severally liable for disgorgement of $11,725,294.92, plus prejudgment interest of $14,028,728.07 for a total of $25,754,022.90. . . . Here, the Final Judgement was clear and unambiguous in its order to pay the disgorgement and prejudgment interest and in its command not to violate the anti-fraud provisions of the securities laws."); SEC v. Musella, 818 F. Supp. 600, 601, 605 (S.D.N.Y. 1993) ("This court's Final Judgment and Order . . . required [defendant] to disgorge profit from trading in securities on inside information. The profit and prejudgment interest totalled $615,918.82 and was due thirty days from the date judgment was entered. . . . There is no doubt here that [defendant] is in contempt of [the Court's] Final Judgment and Order.  Its requirement of disgorgement was clear and unambiguous . . . .").

Durante claims that the judgment is "ambiguous" because he believes that a discrepancy exists between the Judgment's disgorgement amount and the actual value of Durante's gains from his fraudulent scheme.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 21-22.)  Durante conflates the issues.  In essence, he implies that the judgment was modifiable under Federal Rule of Civil Procedure 60(b) as unfair and inflated.  (Durante 11/26/13 Opp. Br. at 22-23.)[10]  However,

---

9/     (...continued)
          Clerk of this Court, together with a letter specifying that payment is made pursuant to this Partial Judgment; and (b) simultaneously transmit photocopies of such payment and letter to the SEC's counsel in this action.

     (10/10/02 Judgment at 9-10; see page 3 above.)

10/    Rule 60(b) reads in relevant part:

     Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

                                 (continued...)

Durante never made a Rule 60 motion, is barred from doing so now (see Part VI below), and he cannot use his failure to seek modification as the basis for claiming that the judgment to pay a specific sum is ambiguous.[11]

  The district court's judgment clearly stated (1) the total amount due, broken down by ill-gotten gains and pre-judgment interest; (2) when the payment must be made; and (3) to whom the payment was to be made.  (10/10/02 Judgment at 9-10.)  "[F]rom the four corners of the order," Durante received instructions that were "specific and definite enough to apprise those within [the order's] scope of the conduct that is being proscribed."  (See cases cited on page 9 above.)  The Court finds that the disgorgement judgment entered against Durante was clear and unambiguous.

---

[10]  (...continued)

    . . .

    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(5)-(6).

[11] Moreover, the cases cited by Durante in support of this argument (Durante 11/26/13 Opp. Br. at 22; Dkt. No. 257: Durante 11/27/13 Letter to Court) are distinguishable and, in any event, they do not address whether an order was "clear and unambiguous," further highlighting Durante's misunderstanding of the issue.  In SEC v. Hirshberg, No. 97-6171, 173 F.3d 846 (table), 1999 WL 163992 (2d Cir. Mar. 18, 1999), a disgorgement order was entered against defendants who promptly appealed, and the Second Circuit remanded to "ensure that [the judgment] does not impose cumulative liabilities on the defendants."  Id. at *4.  Similarly, in SEC v. Razmilovic, No. 12-0357, --- F.3d ----, 2013 WL 6172543 (2d Cir. Nov. 26, 2013), the defendant promptly appealed the district court's calculation of prejudgment interest and the Second Circuit remanded for recalculation without inclusion of frozen assets.  Id. at *1, *19.  Here, Durante did not appeal, nor raise his argument just after entry of the judgment.  In SEC v. Aronson, 11 Civ. 7033, 2013 WL 4082900 (S.D.N.Y. Aug. 6, 2013), the district court, at the summary judgment stage, declined to impose pre-judgment interest on the disgorgement amount of one of multiple defendants because of "her professed ignorance of the . . . fraud," id. at *14, an element that is missing here.

**B.**   **The SEC has Proven Non-Compliance by Clear and Convincing Evidence**

"In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002).[12]

The Court finds that the SEC showed Durante's non-compliance by clear and convincing evidence.   It is undisputed that Durante knew of the Court's October 10, 2002 disgorgement judgment and understood that it required him to pay "disgorgement of $33,783,565.26 and pre-judgment interest in the amount of $6,097,115.60."   (Dkt. No. 59: 10/10/02 Judgment at 9.)[13]   It is further undisputed that as of November 8, 2013, the date of the SEC's current motion, the Clerk of Court had received only three payments towards satisfaction of the judgment: $14,319,346.47[14] in frozen Canadian assets in December 2008 (Dkt. No. 250: Schultze 11/8/13 Aff. ¶ 3; Dkt. No. 255: Willstatter 11/26/13 Aff. ¶ 25); and two $10,000 payments by Durante, allegedly $5,000 per month for July - October 2013, totaling $20,000 (Dkt. No. 261: Schultze Reply Aff. ¶ 2; Willstatter 11/26/13 Aff. ¶ 36).[15]

---

[12]   Accord, e.g., DeWitt Stern Grp., Inc. v. Eisenberg, 13 Civ. 3060, 2013 WL 5815512 at *4 (S.D.N.Y. Oct. 29, 2013); Universitas Educ., LLC v. Nova Grp., Inc., 11 Civ. 1590, 11 Civ. 8726, 2013 WL 3487350 at *6 (S.D.N.Y. July 12, 2013); SEC v. Mattera, 11 Civ. 8323, 2012 WL 4450999 at *11 (S.D.N.Y. Sept. 26, 2012); Zino Davidoff SA v. CVS Corp., 06 Civ. 15332, 2008 WL 1775410 at *13 (S.D.N.Y. Apr. 17, 2008).

[13]   Durante may have disagreed with the disgorgement amount, but he was aware of it and failed to take any action to have it modified.

[14]   The Court ordered receipt of funds in the amount of $14, 256,179.   (Dkt. No. 120: 12/16/08 Order.)   However, the actual amount listed on the receipt is slightly higher at $14,319,346.47.

[15]   Durante has not made any subsequent $5,000 monthly payments, casting further doubt on his good faith.

Durante maintains that (1) he liquidated and transferred all relevant assets to his former criminal defense attorney, Randy Zelin, for payment to the United States; (2) he relinquished control of those assets at that time; and (3) therefore, he has complied with his disgorgement obligation. (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 4-6, 9-11, 24.) Durante erroneously frames the issue as "whether [he] has disgorged his ill-gotten gains, not whether the figure in the Judgment is paid." (Durante 11/26/13 Opp. Br. at 24, emphasis omitted.) Additionally, Durante improperly shifts the burden to satisfy the judgment onto the SEC:

> After the [criminal] sentencing, neither [Durante's attorney] Mr. Zelin's files nor the docket sheets of the civil or criminal cases reveal any evidence of the efforts by the government to follow up with Mr. Durante or his attorneys to finalize the liquidation and transfer begun at the end of 2001 – if indeed there were outstanding matters to be finalized.

(Durante 11/26/13 Opp. Br. at 8, emphasis added.) Durante concedes that he is unable to trace his prior assets after their transfer to his former attorney. (Schultze 11/8/13 Aff. Ex. 8: Durante 8/13/13 Dep. at 90-91.)

As an initial matter, Durante cites no caselaw supporting his position that payment of what a defendant believes to be the value of all ill-gotten gains, even if it is less than the judgment amount, is commensurate with compliance.[16] Furthermore, the October 10, 2002 judgment clearly

---

[16]    A parallel can be drawn in the context of tracing, which requires the identification of specific funds in a defendant's possession that are subject to return.  In F.T.C. v. Bronson Partners, LLC, 654 F.3d 359 (2d Cir. 2011), the Second Circuit held that because it has long been held that disgorgement seeks to deter violations of the law and prevent unjust enrichment, "it is by now so uncontroversial that tracing is not required in disgorgement cases that [the Second Circuit] recently rejected an argument to the contrary via summary order." Id. at 373-74; see also SEC v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000) ("disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset").  Under Durante's approach, "a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an order of disgorgement." SEC v. Banner Fund Int'l, 211 F.3d at
(continued...)

requires Durante to pay disgorgement to "the Clerk of this Court, together with a letter specifying that payment is made pursuant to this Partial Judgment; and (b) simultaneously transmit photocopies of such payment and letter to the SEC's counsel in this action."  (Dkt. No. 59: 10/10/02 Judgment at 10.)  It is of no moment that Durante alleges he is unable to trace the funds purportedly transferred to his attorney Zelin.  (See Dkt. No. 260: SEC Reply Br. at 4-5; Schultze 11/8/13 Aff. Ex. 8: Durante 8/13/13 Dep. at 90.)  The judgment placed the burden of proving payment on Durante and his failure to substantiate his claims of payment, coupled with only three receipts of payment to this Court for less than half the ordered amount, suffice to meet the clear and convincing standard for evidence of non-compliance.

### C.      Durante has Not Made a Diligent Attempt to Comply

"Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance."  Zino Davidoff SA v. CVS Corp., 06 Civ. 15332, 2008 WL 1775410 at *8 (S.D.N.Y. Apr. 17, 2008); see also, e.g., Yurman Studio, Inc. v. Castaneda, 07 Civ. 1241, 07 Civ. 7862, 2009 WL 454275 at *2 (S.D.N.Y. Feb. 23, 2009).  "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case."  Yurman Studio, Inc. v. Castaneda, 2009 WL 454275 at *2.

The SEC has established a failure to exercise reasonable diligence by Durante in attempting to comply with the judgment.  Although Durante asserts that he transferred over $35 million in assets to his criminal defense attorneys for payment to the government (see pages 3-4, 6-7

---

16/      (...continued)
         617.  Thus, Durante cannot avoid his obligation to pay disgorgement by claiming that the
         actual ill-gotten assets are no longer in his possession.

above), the Court's registry accounts for only three payments: $14,319,347.47 transferred from Durante's Canadian accounts and two $10,000 payments made by Durante since August 2013 (Dkt. No. 255: Willstatter 11/26/13 Aff. ¶ 36; Dkt. No. 260: SEC Reply Br. at 6).   Durante's recent payments in an infinitesimal amount in relation to the judgment is hardly substantial compliance. See, e.g., Adams v. N.Y.S. Educ. Dep't, 08 Civ. 5996, --- F. Supp. 2d ----, 2013 WL 4054875 at *2 (S.D.N.Y. Aug. 1, 2013) (defendant's proposed $50 monthly payment towards $5,000 sanction did not amount to reasonable diligence), aff'd, Nos. 12-2836-cv, 12-2839-cv, --- F. App'x ----, 2013 WL 5273044 (2d Cir. Sept. 19, 2013); SEC v. Aragon Capital Advisors, LLC, 07 Civ. 919, 2011 WL 3278907 at *6 (S.D.N.Y. July 26, 2011) (offer to transfer $120,000 loan held by defendant did not amount to reasonably diligent compliance with $2,008,151.27 disgorgement judgment); SEC v. Musella, 818 F. Supp. 600, 602 (S.D.N.Y. 1993) ("[Defendant's] offer to the Commission to pay $50,000 over five years in full satisfaction of the [$615,918.82] Judgment, which was not accepted, and his compliance with Magistrate Grubin's interim order directing monthly payments of $1,500 cannot be characterized as a reasonably diligent and energetic attempt to comply.").[17/]   Furthermore, as discussed below, Durante has engaged in a systematic effort to hide his income from the SEC. Thus, Durante has failed to exercise reasonable diligence.

### D.   Durante has Failed to Establish a Present Inability to Comply

Once the moving party has established a prima facie case for contempt, an alleged contemnor who claims that he is unable to pay a judgment "bears the burden of producing evidence of his inability to comply" with the disgorgement amount.   Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (citing United States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552

---

[17/]   At $5,000 a month, it would take approximately 5,100 months -- or 425 years -- to satisfy the judgment's balance.   (See also page 13 & n.15 above.)

(1983)).[18] Durante's "burden is to establish his inability clearly, plainly, and unmistakably." <u>Huber</u>

v. <u>Marine Midland Bank</u>, 51 F.3d at 10.   That is to say, Durante must clearly establish "that

compliance is . . . impossible." <u>United States</u> v. <u>Rylander</u>, 460 U.S. at 757, 103 S. Ct. at 1552; <u>see</u>

<u>also</u>, <u>e.g.</u>, <u>Armstrong</u> v. <u>Guccione</u>, 470 F.3d 89, 99 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 989, 128

S. Ct. 486 (2007).  If Durante "'offers no evidence as to his inability to comply . . . or stands mute,'

he has not met his burden." <u>Huber</u> v. <u>Marine Midland Bank</u>, 51 F.3d at 10 (quoting <u>Maggio</u> v. <u>Zeitz</u>,

333 U.S. 56, 75, 68 S. Ct. 401, 411 (1948)).  Durante "must demonstrate his inability to comply

'categorically and in detail.'" <u>SEC</u> v. <u>Bankers Alliance Corp.</u>, Civ. No. 95-0428, 1995 WL 590665

at *2 (D.D.C. May 5, 1995).

      Moreover, proof that Durante cannot pay the entire amount would not absolve him

from paying as much as is possible to pay under the circumstances:

> When an order requires a party to pay a sum certain, a mere showing that the party
> was unable to pay the entire amount by the date specified is insufficient to avoid a
> finding of contempt.  When a party is absolutely unable to comply due to poverty or
> insolvency, inability to comply is a complete defense.  Otherwise, the party must pay
> what he or she can.

<u>SEC</u> v. <u>Musella</u>, 818 F. Supp. 600, 602 (S.D.N.Y. 1993) (citations omitted).[19]  The Court presumes

a present ability to comply with an order where at some point in the past a defendant could have

complied with that order.  <u>E.g.</u>, <u>SEC</u> v. <u>Pittsford Capital Income Partners, LLC</u>, No. 06 Civ. 6353,

---

[18]     <u>Accord</u>, <u>e.g.</u>, <u>Close-Up Int'l, Inc.</u> v. <u>Berov</u>, 474 F. App'x 790, 795 (2d Cir. 2012); <u>Adams</u>
v. <u>N.Y.S. Educ. Dep't</u>, 08 Civ. 5996, --- F. Supp. 2d ----, 2013 WL 4054875 at *2 (S.D.N.Y.
Aug. 1, 2013), <u>aff'd</u>, Nos. 12-2836-cv, 12-2839-cv, --- F. App'x ----, 2013 WL 5273044 (2d
Cir. Sept. 19, 2013); <u>SEC</u> v. <u>Aragon Capital Advisors, LLC</u>, 07 Civ. 919, 2011 WL 3278907
at *5 (S.D.N.Y. July 26, 2011).

[19]     <u>See also</u>, <u>e.g.</u>, <u>Mingoia</u> v. <u>Am. Lath & Plaster Co.</u>, 03 Civ. 6491, 2005 WL 3071271 at *4
(S.D.N.Y. Nov. 15, 2005); <u>SEC</u> v. <u>Zubkis</u>, 97 Civ. 8086, 2003 WL 22118978 at *4
(S.D.N.Y. Sept. 11, 2003).

2010 WL 2025500 at *3 (W.D.N.Y. May 20, 2010); U.S. SEC v. Universal Express, Inc., 546 F.

Supp. 2d 132, 135 (S.D.N.Y. 2008) (Lynch, D.J.); SEC v. Princeton Econ. Int'l Ltd., 152 F. Supp.

2d. 456, 459 (S.D.N.Y. 2001).

    Durante asserts that it is now impossible for him to satisfy any outstanding portion

of the judgment.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 24.)  Durante offers as proof of his

present inability to comply a deposition transcript from 2004 where he stated that all assets

regarding the fraudulent activity were marshaled, liquidated, and placed into various accounts over

which he has no control.  (Durante 11/26/13 Opp. Br. at 9-11.)[20]

    First, Durante's mere assertion of his inability to pay, without any supporting

documentation, is highly unpersuasive.  Durante's proof amounts to nothing more than conclusory

statements, which are inadequate to carry his burden of production.  E.g., Dell Inc. v. Compudirect,

Inc., 316 F. App'x 32, 34 (2d Cir. 2009) ("'Conclusory statements are inadequate to carry this

burden.'" (quoting Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995))); Universitas Educ.,

LLC v. Nova Grp., Inc., 11 Civ. 1590, 11 Civ. 8726, 2013 WL 3487350 at *6 (S.D.N.Y. July 12,

2013).[21]  Second, this is especially true in light of Durante's lack of credibility, as established by the

facts surrounding this case.  The default judgment involved a finding, in a civil context, of Durante's

deceptive activities in the fraudulent manipulation of the public market for Wamex stock.  (Dkt. No.

59: 10/10/02 Judgment at 3.)  Furthermore, Durante testified that he falsified his apartment lease

---

[20] Durante repeatedly conflates allegedly turning over his assets to his criminal defense counsel with no longer being able to pay.  Yet, the judgment remains outstanding and Durante clearly is not living in poverty.

[21] See, e.g., Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc., No. 11-CV-3252, 2013 WL 2237542 at *7 (E.D.N.Y. May 21, 2013); Am. Honda Motor Co. v. V.M. Paolozzi Imports, Inc., No. 10-CV-955, 2012 WL 3822132 at *3 (N.D.N.Y. Sept. 4, 2012).

application, deposited funds in a Canadian bank account to avoid collection, and engaged in a scheme through which he would receive a portion of $1 million dollars in "legal fees" paid to his criminal defense attorneys.  (See page 7 above.)  The credibility of an alleged contemnor's denial of an ability to pay must be weighed in light of his circumstances.  Huber v. Marine Midland Bank, 51 F.3d at 10.[22/]

Moreover, the SEC has produced ample evidence of both Durante's past and present ability to comply with the disgorgement judgment.  The evidence consists of, inter alia, bank statements, credit card statements, and Durante's own deposition testimony.

### 1.    Zenith Estates and New Market Enterprises Have Funneled Substantial Monies to the Durantes

On November 12, 2008, Zenith Estates was incorporated in Nevada, naming Kenneth Wise as Director, Secretary, and Treasurer.  (Dkt. No. 251: Schultze 11/8/13 Aff. Ex. 20: Nev. Sec. of State Filings for Zenith Estates.)  On August 21, 2009, New Market Enterprises was incorporated in Nevada.  (Schultze 11/8/13 Aff. Ex. 23: Nev. Sec. of State Filings for New Market.)  Durante paid the 2011 business license and listing fees for both corporations.  (Nev. Sec. of State Filings for Zenith Estates; Nev. Sec. of State Filings for New Market.)  The SEC obtained in discovery bank statements from Zenith Estates and New Market Enterprises indicating that both corporations (1) paid substantial credit card charges incurred by Durante; and (2) made substantial payments to or on behalf of Durante's family.  (Schultze 11/8/13 Aff. Ex. 21: Zenith Estates Account Statement; Ex. 24: New Market Enterprises Account Statement.)  Zenith Estates paid Durante's personal expenses.  The SEC produced a certified check drawn on the Zenith Estates account and made

---

[22/]    See also, e.g., Dell Inc. v. Compudirect, Inc., 316 F. App'x at 34; Leser v. U.S. Bank Nat. Ass'n, No. 09-CV-2362, 2012 WL 580489 at *8 (E.D.N.Y. Feb. 21, 2012); Ceglia v. Zuckerberg, No. 10-CV-00569, 2012 WL 95362 at *10 (W.D.N.Y. Jan. 10, 2012).

payable to Bloomingdale's in the amount of $14,462.95 on Durante's behalf.  (Zenith Estates Account Statement at 5; Schultze 11/8/13 Aff. Ex. 8: Durante 8/13/13 Dep. at 181.)  New Market Enterprises paid $406,500 to Durante's wife Svetlana, $31,000 to or on behalf of Durante's son Adam, and $25,800 to or on behalf of Durante's daughter Alison.  (New Market Enterprises Account Statement; see also SEC Br. at 10.)  Durante has offered no explanation as to why these businesses are funneling money to his family.

Durante was added as an authorized user on an American Express card and a Citibank card, both belonging to Zenith Estates Director Kenneth Wise.  (SEC Br. at 6 & Schultze 11/8/13 Aff. Exs. 16-17.)  Wise also provided Durante's wife with a credit card.  (SEC Br. at 6.)  Durante charged over $150,000 on Wise's American Express card and the bill was paid by Zenith Estates. (Schultze 11/8/13 Aff. Ex. 15: Summary of American Express Account Records at 2; Zenith Estates Account Statement at 0899; see SEC Br. at 6.)

### 2.  Durante Has Repeatedly Lied About His Income

Durante testified that in 2009 he began working at Nature Cure, Inc., a "wholesale and retail vitamin supplement company" that distributed products for sale in truck stops throughout the United States.  (Dkt. No. 251: Schultze 11/8/13 Aff. Ex. 2: Durante 10/2/12 Dep. at 34, 36.) Durante testified that his salary was approximately $50,000.  (Durante 10/2/12 Dep. at 36.)  On his federal tax return for 2010, Durante reported $52,000 as his gross income.  (See page 5 above.)

Durante's responses to SEC discovery requests yielded substantial inconsistencies. Durante's apartment lease application, subpoenaed from the building management company, lists his yearly income at $390,000.  (Schultze 11/8/13 Aff. Ex. 7: Durante Lease Application at 1.) Moreover, Durante's lease indicated a yearly rent of $86,700, an amount significantly greater than his income reported on his 2010 Federal Tax Return.  (See Schultze 11/8/13 Aff. Ex. 5: Durante

First Production Responses.)  Durante maintains that his wife Svetlana pays for the apartment (Durante 10/2/12 Dep. at 90; Schultze 11/8/13 Aff. Ex. 8: Durante 8/13/13 Dep. at 145), but offered nothing to substantiate this claim.

Durante supplemented his initial income disclosures by admitting acceptance of substantial sums of money from "friends." (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 13; Dkt. No. 252: SEC Br. at 18.)  Durante disclosed that Kenneth Wise, Director of Zenith Estates, either loaned money or paid expenses on Durante's behalf in an amount exceeding $300,000. (Schultze 11/8/13 Aff. Ex. 12: Durante Second Production Responses at 7-8.)[23/]  These payments were made informally on "a handshake between friends." (Durante Second Production Responses at 8.) Durante further admitted to receiving an additional $125,000 in residuals from past productions of Broadway shows, based on "agreements which have expired but were honored nonetheless among friends." (Durante Second Production Responses at 6-7.)  Durante does not explain why he did not use the residual payments to pay down the judgment.  Durante also stated that he received approximately $150,000 in "cash and accounts" from his mother upon her passing. (Durante Second Production Responses at 7.)  He did not use any of that money to pay down the judgment.  Finally, Durante disclosed that he had "recently taken a position which will pay [him] approximately $225-$250k annually with bonuses." (Durante Second Production Responses at 8.)  Nevertheless, he has not continued, let alone increased the amount of, his $5,000 monthly payments on the judgment.

Accordingly, Durante has failed to meet his burden of establishing his inability to comply "clearly, plainly, and unmistakably." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).

---

[23/]     The SEC calculates that Durante, primarily through his wife's accounts, has received over $1.6 million dollars since his release from prison in 2009. (SEC Br. at 2.)

### III.   THE COURT DRAWS AN ADVERSE INFERENCE FROM DURANTE'S WIFE'S ASSERTION OF HER FIFTH AMENDMENT PRIVILEGE[24]/

"[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558 (1976). Moreover, where a non-party declines to answer questions in a civil case on the basis of the Fifth Amendment privilege against self-incrimination, an adverse inference may be drawn against a party who is associated with the witness, depending on the circumstances of the particular case. See, e.g., LiButti v. United States, 107 F.3d 110, 120-21 (2d Cir. 1997); Brink's Inc. v. City of N.Y., 717 F.2d 700, 709 (2d Cir. 1983). "The Second Circuit has identified 'a number of nonexclusive factors' to guide this determination, including the nature of the relevant relationships, the degree of control over the non-testifying witness, the compatibility of the interests between the non-testifying witness and the party, and the role of the non-testifying witness in the litigation." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011) (quoting LiButti v. United States, 107 F.3d at 123-24). "[T]he overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." LiButti v. United States, 107 F.3d at 124.

The circumstances of this case compel consideration by the Court of Svetlana Durante's refusals to answer the questions addressed to her that go directly to the only issue before

---

[24]/   In a civil case, a court may, but need not, draw an adverse inference based on a witness's assertion of her Fifth Amendment privilege. Here, the Court finds the record evidence sufficient to hold Durante in contempt regardless of any adverse inference, but finds drawing one appropriate nevertheless. Notably, by asserting her Fifth Amendment rights, Svetlana Durante left the record devoid of evidence supportive of her husband's position on this motion.

the Court, i.e., how could Durante, who claimed to make only $50,000 a year and have no assets, afford his current lifestyle?  First, the relationship between the parties is of the strongest nature: husband and wife.  See, e.g., SEC v. McGinn, Smith & Co., 752 F. Supp. 2d 194, 210 (N.D.N.Y.) ("For purposes of this analysis, this [marital] relationship could not be closer."), order vacated in part on reconsideration by 752 F. Supp. 2d 220 (N.D.N.Y. 2010).  As the Second Circuit has noted, "[t]he closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship."  LiButti v. United States, 107 F.3d at 123.  Moreover, Svetlana introduced Durante to Wise, who thereafter substantially supported Durante's lavish lifestyle.  (Dkt. No. 252: Schultze 11/8/13 Aff. Ex. 8: Durante 8/13/13 Dep. at 39.)  Second, Durante's and his wife's interests in the outcome of this matter are clearly aligned.  Because the SEC analyzes household income in debt collections, see, e.g., S.E.C. v. Musella, 818 F. Supp. 600, 604 (S.D.N.Y. 1993) (requiring defendant to submit biannual household income statements to the SEC), it would be mutually beneficial if the SEC were precluded from making further collections.  Finally, Svetlana is a prominent figure in the case because Durante has used her earnings to explain, in part, his current spending levels.  (Schultze 11/8/13 Aff. Ex. 2: Durante 7/04 Dep. at 90; Durante 8/13/13 Dep. at 145.)

Under LiButti, the Court's "overarching concern" in making its determination is whether the adverse inference: (1) is trustworthy considering all of the circumstances, and (2) "will advance the search for the truth" in this case.  LiButti v. United States, 107 F.3d at 123.  Here, the SEC seeks an inference in its favor on all of the questions Svetlana refused to answer, which is nearly all of the substantive questions posed. (Dkt. No. 252: SEC Br. at 19, 21-22; Schultze 11/8/13 Aff. Ex. 11: Svetlana Dep. at 10, 13, 17, 30, 37, 42, 176.)  The topics of the unanswered questions range from Svetlana's occupation to the over $1.2 million dollars in deposits into a bank account

held solely in her name and her husband's involvement with Zenith Estates and New Market Enterprises.  (Svetlana Dep. at 10, 13, 30, 42, 171; see also Schultze 11/8/13 Aff. Ex. 13(d): S. Durante Account Statement.)

Having considered the LiButti factors and trustworthiness issues, and given the substantial evidence provided by the SEC regarding the dubious nature of Durante's and Svetlana's finances (see, e.g., S. Durante Account Statement; Schultze 11/8/13 Aff. Ex. 14: S. Durante Porsche Title; Ex. 29: S. Durante Account Summary; Ex. 30: Summary of Deposits to S. Durante Account), and Svetlana Durante's blanket assertion of her Fifth Amendment privilege, the Court finds that an adverse inference in favor of the SEC and against Durante on all unanswered questions posed to Svetlana Durante is appropriate.  See, e.g., Bank of Am., N.A. v. Fischer, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) ("Based on [defendants'] blanket Fifth Amendment privilege assertions, the Court draws a negative inference against defendants as to all aspects of plaintiff's . . . claims."); U.S. SEC v. Suman, 684 F. Supp. 2d 378, 387 (S.D.N.Y. 2010) (adverse inference appropriate where defendants "evinced their intention to unduly complicate [the] matter and burden the SEC"), aff'd 421 F. App'x 86 (2d Cir. 2011).[25]

## IV.   DURANTE'S DEFENSES LACK MERIT

Durante asserts that the SEC's motion is barred by the defenses of laches, waiver, estoppel, and unclean hands.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 1, 14-20.)  The Court

---

[25]   See also, e.g., Ball v. Cook, 11 Civ. 5926, 2012 WL 4841735 at *5 (S.D.N.Y. Oct. 9, 2012) (universal invocation of Fifth Amendment privilege prevented plaintiff from obtaining probative information and warranted drawing an adverse inference); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d at 555 ("Thus, the Court is permitted to, and does, draw a negative inference from Third-Party Defendants . . . refusal to answer any questions at trial . . . pursuant to their Fifth Amendment privilege against self-incrimination."); Armstrong v. Collins, 01 Civ. 2437, 02 Civ. 2796, 2010 WL 1141158 at *33 (S.D.N.Y. Mar. 24, 2010).

finds Durante's arguments meritless.

A.  **Laches**

Durante argues that the SEC's enforcement action is barred by the equitable defense of laches because, <u>inter alia</u>, the SEC's delay in seeking enforcement is egregious and the SEC is "acting as a conduit for the recovery of sums due individual citizens rather than the public treasury." (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 14-15.)  Durante's argument is fundamentally flawed because it is based on the faulty premise that the disgorgement sought to be enforced by the SEC "is focused exclusively on compensating injured investors" (Durante 11/26/13 Opp. Br. at 15), rather than preventing unjust enrichment by those who violate the federal securities laws.  "In a securities enforcement action . . . 'disgorgement' is not available primarily to compensate victims." <u>SEC</u> v. <u>Cavanagh</u>, 445 F.3d 105, 117 (2d Cir. 2006).  Rather, "disgorgement is a distinctly public-regarding remedy."  <u>F.T.C.</u> v. <u>Bronson Partners, LLC</u>, 654 F.3d 359, 372 (2d Cir. 2011); <u>see also</u> <u>F.T.C.</u> v. <u>LoanPointe, LLC</u>, 525 F. App'x 696, 698 (10th Cir. 2013); <u>SEC</u> v. <u>Cavanagh</u>, 445 F.3d at 117 ("In the words of Judge Friendly, '[T]he primary purpose of disgorgement is not to compensate investors.  Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched.'" (quoting <u>SEC</u> v. <u>Commonwealth Chem. Sec., Inc.</u>, 574 F.2d 90, 102 (2d Cir. 1978) (Friendly, C.J.))).  In light of this distinction, the Second Circuit has made clear that government agencies that have obtained a disgorgement award are under no obligation "to make any particular effort to compensate the victims that they can identify." <u>F.T.C.</u> v. <u>Bronson Partners, LLC</u>, 654 F.3d at 373 (emphasis omitted).

Durante's reliance on the holding in <u>Cayuga Indian Nation</u> v. <u>Pataki</u>, 413 F.3d 266 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1128, 126 S. Ct. 2022 (2006), is misplaced.  (Durante 11/26/13

Opp. Br. at 14-15.)[26/]   In Cayuga, the United States intervened, on behalf of itself and on behalf of

the Cayuga Indian Nation, seeking a declaration that the plaintiffs were entitled to damages and

interest.  Id. at 270-71.  The SEC in the present case has not sought damages on behalf of private

parties; rather, the SEC has undertaken "to enforce a public right [and] protect the public interest"

by preventing Durante's unjust enrichment through retaining ill-gotten gains.  Id. at 279 n.8.

Moreover, even if Cayuga were applicable, Durante provides no legal support for either the

proposition that the ten-year "delay" in enforcement is egregious or that the SEC seeks to

compensate injured investors.  (Durante 11/26/13 Opp. Br. at 15-17.)

     **B.**    **Waiver**

     Durante's claim of waiver by the SEC (Dkt. No. 256: Durante 11/26/13 Opp. Br. at

17-18) is similarly unavailing.   "The term 'waiver' is best reserved for a litigant's intentional

relinquishment of a known right."  Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999),

cert. denied, 530 U.S. 1244, 120 S. Ct. 2691 (2000); see also Patterson v. Balsamico, 440 F.3d 104,

112 (2d Cir. 2006).  The Second Circuit has observed that "[i]t has often been said that 'the

[Securities and Exchange] Commission may not waive the requirements of an act of Congress nor

may the doctrine of estoppel be invoked against the Commission.'"  SEC v. Culpepper, 270 F.2d

241, 248 (2d Cir. 1959).  This Court has not found, nor has Durante provided, any authority to

contradict that proposition.

     **C.**    **Estoppel**

     Equitable estoppel applies when "the enforcement of the rights of one party would

---

[26/]    It is worth noting that both Cayuga and Cavanagh were authored within one year of each other by Judge José A. Cabranes, thus reinforcing the distinction between and appropriate application of the holdings.

27

work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 725 (2d Cir. 2001). Equitable estoppel is proven by "proof that the plaintiff made a misrepresentation of fact to the defendant with reason to believe that the defendant would rely upon it; that the defendant did reasonably rely upon it; and that the defendant was harmed by the reliance." SEC v. KPMG LLP, 03 Civ. 671, 2003 WL 21976733 at *2 (S.D.N.Y. Aug. 20, 2003).[27/]

The government is not subject to the defense of equitable estoppel absent "the most serious of circumstances." Rojas-Reyes v. INS, 235 F.3d 115, 126 (2d Cir. 2000) (quotations omitted). An assertion of estoppel against the government requires, at minimum, a showing that "the Government's misrepresentation was inconsistent with the 'minimum standard of decency, honor, and reliability' which citizens have a right to expect from their Government." SEC v. KPMG LLP, 2003 WL 21976733 at *2 (quoting Heckler v. Commun. Health Servs., 467 U.S. 51, 61, 104 S. Ct. 2218, 2224 (1984)). That is to say, the party asserting the defense must show "'affirmative misconduct' by the government." Rojas-Reyes v. INS, 235 F.3d at 126; see also Global Land, Inc. v. Mayor & Common Council of City of Peekskill, 377 F. App'x 43, 46 (2d Cir. 2010). In the limited occasions where the defense is available, it is applied only "'with the utmost caution and restraint.'" Rojas-Reyes v. INS, 235 F.3d at 126.

Durante has failed to make the necessary showing. Durante insinuates, without citation to law or fact, that the SEC acted egregiously by failing to take further action after Durante testified in a 2004 deposition that he had disgorged all his ill-gotten gains, thus constituting an affirmative representation that Durante was in compliance with his disgorgement obligation. (Dkt.

---

[27/]   The plaintiff's misrepresentation need not be intentional. E.g., Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d at 726; SEC v. KPMG LLP, 2003 WL 21976733 at *2.

No. 256: Durante 11/26/13 Opp. Br. at 19.)  The testimony to which Durante refers is insufficient to prove either a representation of fact or any affirmative misconduct by the SEC.  (See Durante Opp. Br. at 11.)[28]  Furthermore, the Second Circuit has repeatedly held that mere delays by government agencies do not rise to level of affirmative misconduct absent evidence that the delay was deliberate or the result of wrongdoing by a U.S. official.  See, e.g., Santiago Hernandez v. Holder, 327 F. App'x 310, 312 (2d Cir. 2009) (thirteen year delay in processing an immigration application did not amount to affirmative misconduct); Gray v. Keisler, 253 F. App'x 78, 80 (2d Cir. 2007).[29]  Durante has failed to show any evidence of affirmative misconduct by the SEC and,

---

[28]    On re-direct examination by the SEC:

> Q.    . . . There was some discussion about frozen assets and you[r] marshaling your assets.  At what point did you lose control over your assets?
>
> . . . .
>
> A.    I think that happened in stages, certainly the most dramatic stage being April of 2000 when the funds in Canada were frozen.
>
> . . . .
>
> Q.    By the time you pled guilty which was prior to you going into incarceration, what amount of assets did you have control over at that point?
>
> A.    Very little.
>
> Q.    When you say very little, less than $100,000?
>
> A.    Probably less than $100,000, yes.

(Dkt. No. 255: Willstatter 11/26/13 Aff. Ex. L: Durante 7/04 Dep. at 410-12.)

[29]    See also, e.g., Davis v. United States, 13 Civ. 403, 13 Civ. 404, 2013 WL 5225931 at *5 (S.D.N.Y. Sept. 13, 2013); In re Beacon Assoc. Litig., 09 Civ. 777, 10 Civ. 8000, 2011 WL 3586129 at *3 (S.D.N.Y. Aug. 11, 2011); United States v. Lemos, 08 Civ. 11144, 2010 WL (continued...)

therefore, has failed to prove the necessary elements for application of equitable estoppel.

### D.   **Unclean Hands**

Lastly, Durante argues that enforcement of the judgment is barred by the doctrine of unclean hands.  (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 19-20.)  Like laches, waiver, and estoppel, unclean hands is not readily available, if available at all, against the United States government (see page 26 above), and "require[s] that the 'misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level.'"  In re Beacon Assoc. Litig., 09 Civ. 777, 10 Civ. 8000, 2011 WL 3586129 at *3 (S.D.N.Y. Aug. 11, 2011).  Durante contends in only conclusory terms, and again without citation to any legal authority, that the SEC's behavior "does not befit a regulatory body."  (Durante 11/26/13 Opp. Br. at 20.)  There is nothing in the record before this Court that would impugn the SEC's conduct to the point of rising to a constitutional violation.

Durante is not entitled to any equitable defenses to the Court's finding that he is in contempt.

## V.   **CONTEMPT SANCTIONS**

Once civil contempt is established, district courts have "'broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions[.]'"  EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir. 2001).[30]  In deciding the appropriate sanction for civil contempt, a court must explicitly

---

[29]/   (...continued)
1192095 at *4 (S.D.N.Y. Mar. 26, 2010).

[30]/   See, e.g., Williamson v. Recovery Ltd. P'ship, 467 F. App'x 382, 399 (6th Cir.), cert. denied, 133 S. Ct. 478 (2012); Goya Foods Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77-78 (1st Cir.), (continued...)

consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him."  Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir. 1987).[31/]  "Incarceration under a civil contempt order pending compliance with the Court's orders is within the Court's authority and is a well-recognized method of coercing compliance with court orders."  SEC v. Bremont, 96 Civ. 8771, 2003 WL 21398932 at *7 (S.D.N.Y. June 18, 2003) (ordering contempt incarceration for failing to pay disgorgement judgment); see also, e.g., Close-Up Int'l, Inc. v. Berov, 474 F. App'x 790, 795 (2d Cir. 2012) ("It is a widely-held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority."); City of N.Y. v. Venkataram, 2012 WL 2921876 at *4.

Durante is in willful contempt of this Court's judgment of disgorgement.  The facts conclusively demonstrate that Durante is and, at least since his release from prison has been, in a

---

[30/]     (...continued)
cert. denied, 537 U.S. 974, 123 S. Ct. 434 (2002); CBS Broad. Inc. v. FilmOn.com, Inc., 10 Civ. 7532, 2013 WL 4828592 at *8 (S.D.N.Y. Sept. 10, 2013); SEC v. Mattera, 11 Civ. 8323, 2012 WL 4450999 at *13 (S.D.N.Y. Sept. 26, 2012); City of N.Y. v. Venkataram, 06 Civ. 6578, 2012 WL 2921876 at *3 (S.D.N.Y. July 18, 2012); SEC v. Pittsford Capital Income Partners, LLC, No. 06 Civ. 6353, 2010 WL 2025500 at *3 (W.D.N.Y. May 20, 2010).

[31/]     Accord, e.g., EEOC v. Local 638, 81 F.3d 1162, 1177 (2d Cir.), cert. denied, 519 U.S. 945, 117 S. Ct. 333 (1996); Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd., 09 Civ. 9705, 2013 WL 5997707 at *5 (S.D.N.Y. Nov. 13, 2013); CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship, 12 Civ. 8087, 2013 WL 324061 at *3 (S.D.N.Y. Jan. 24, 2013); Gucci Am., Inc. v. Weixing Li, 10 Civ. 4974, 2012 WL 5992142 at *7 (S.D.N.Y. Nov. 15, 2012); Doresett v. Cnty. of Nassau, No. CV 10-01258, 2012 WL 2076911 at *8-9 (E.D.N.Y. June 7, 2012);  New York v. U.S. Capital Funding, LLC, No. 09-CV-0004, 2011 WL 3489914 at *8 (E.D.N.Y. Aug. 9, 2011); Allstate Ins. Co. v. Nair, Civ. No. 10cv88, 2011 WL 1832774 at *3 (D. Conn. May 13, 2011).

position to make significant payments on the judgment, but instead has chosen to make every effort to hide his financial condition and steadfastly frustrate the SEC's attempts at collection.  Durante only offers a fanciful tale of unparalleled charity and generosity by "friends."  (Even if that were true, Durante should be using these funds to pay off the judgment, not to live a life of luxury.)

Because Durante has failed to comply, despite being given every opportunity to do so, he should be ordered incarcerated until he makes meaningful payments towards the disgorgement amount and provides a current and accurate accounting of his income and assets.  No lesser coercive sanction will produce compliance.  Imposing fines on a defendant like Durante who has failed to pay a multi-million dollar judgment is an exercise in futility.  See, e.g., Adams v. N.Y.S. Educ. Dep't, 08 Civ. 5996, --- F. Supp. 2d ----, 2013 WL 4054875 at *3 (S.D.N.Y. Aug. 1, 2013) ("While imprisonment for civil contempt is not an insignificant measure, it is necessary in light of [defendant's] repeated and intransigent failures to make any payment on the Sanction and in the interests of protecting the integrity of the Court's orders."), aff'd, Nos. 12-2836-cv, 12-2839-cv, --- F. App'x ----, 2013 WL 5273044 (2d Cir. Sept. 19, 2013); U.S. SEC v. Universal Exp., Inc., 546 F. Supp. 2d 132, 142 (S.D.N.Y. 2008) (Lynch, D.J.); SEC v. Bremont, 96 Civ. 8771, 2003 WL 21398932 at *7 (S.D.N.Y. June 18, 2003).

## VI.   DURANTE'S CROSS-MOTION TO MODIFY THE JUDGMENT IS UNTIMELY

Durante has cross-moved under Rule 60(b)(5) and (6), asserting that he is entitled to relief because the judgment is either satisfied or applying it prospectively is no longer equitable. (Dkt. No. 256: Durante 11/26/13 Opp. Br. at 27.)  Durante filed this "cross-motion" (actually just a portion of his opposition brief) more than ten years after the disgorgement judgment was entered and more than two years after the SEC's renewed collection attempts.  (See pages 2, 4 above.) Under either starting date, Durante's motion is untimely.

Pursuant to Federal Rule of Civil Procedure 60(c), a "motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Courts "must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay" to determine whether the Rule 60(b) motion was filed within a "reasonable time." PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir.), cert. denied, 464 U.S. 936, 104 S. Ct. 344 (1983).[32] "Courts in the Second Circuit have routinely held that shorter periods of time [than Durante's delay here] are unreasonable." Carbone v. Cunningham, 857 F. Supp. 2d 486,488 (S.D.N.Y. 2012) (motion untimely when filed more than four years after denial of habeas petition with no explanation for the delay); see, e.g., Pabon v. Maciol, 374 F. App'x 178, 180 (2d Cir. 2010) (motion untimely where petitioner "has not provided any reason why he did not file his Rule 60(b) motion until almost nine months after this Court denied his petition for rehearing of the order affirming the district court's judgment, and almost four years after the district court entered its judgment").[33] Indeed, the "Second Circuit has interpreted a 'reasonable time' as eighteen months, unless the movant shows good cause for the delay or mitigating circumstances." Wells v. N.Y.C. Transit Auth., 13 Civ. 4965,

---

[32]    Accord, e.g., Flemming v. New York, 423 F. App'x 64, 65 (2d Cir. 2011); Niederland v. Chase, 425 F. App'x 10, 12 (2d Cir. 2011); Brown v. Enzyme Dev., 380 F. App'x 97, 98 (2d Cir. 2010).

[33]    See also, e.g., Kellogg v. Strack, 269 F.3d 100, 104 (2d Cir. 2001) (finding twenty-six month delay after judgment to be unreasonable), cert. denied, 535 U.S. 932, 122 S. Ct. 1306 (2002); Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001) (motion filed three and a half years after entry of judgment was untimely); Truskoski v. ESPN, Inc., 60 F.3d 74, 76, 77 (2d Cir. 1995) (Rule 60(b)(6) motion filed eighteen months after judgment was untimely); Hoffenberg v. United States, 00 Civ. 1686, 2010 WL 1685558 at *5 (S.D.N.Y. Apr. 26, 2010) ("[J]udgment was entered on July 28, 2006, and [petitioner]'s motion was not filed until December 28, 2009, a delay of almost three and a half years. Even if the relevant judgment were the Court's denial of a certificate of appealability on the issues raised in the Supplemental Declaration, the delay amounts to more than two and half years. The motion is therefore time-barred."); Malik v. Mackey, 03 Civ. 0580, 2009 WL 255861 at *1 (S.D.N.Y. Jan. 30, 2009) (motion filed two years after entry of judgment was untimely).

2013 WL 6409457 at *3 (S.D.N.Y. Dec. 9, 2013); see also, e.g., Nevado v. United States, 282 F.

App'x 944, 945-46 (2d Cir. 2008); Rowe Entm't v. William Morris Agency, Inc., 98 Civ. 8272, 2012

WL 5464611 at *2 (S.D.N.Y. Nov. 8, 2012).

       Accordingly, Durante's cross-motion to modify the judgment should be denied as

time-barred.[34]/

## CONCLUSION

       For the reasons discussed above, the SEC's motion (Dkt. No. 250) to hold Edward

Durante in contempt for failure to pay the disgorgement judgment should be GRANTED and

Durante's cross-motion to modify the judgment should be DENIED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

Deborah A. Batts, 500 Pearl Street, Room 2510, and to my chambers, 500 Pearl Street, Room 1370.

Any requests for an extension of time for filing objections must be directed to Judge Batts (with a

courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections

for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475

F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d

Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d

---

[34]/    In addition, for the reasons set forth in Part II above, the motion also is meritless to the
extent it argues that the judgment has been satisfied, the disgorgement amount is inflated,
and Durante is no longer able to make payments.

34

Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1038, 113 S.

Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u>

v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38

(2d Cir. 1983).


Dated:        New York, New York
              December 19, 2013


                                      Respectfully submitted,


                                      _____
                                      **Andrew J. Peck**
                                      United States Magistrate Judge


Copies to:        Carol Schultze, Esq. (ECF)
                  Richard Willstatter, Esq. (ECF)
                  Judge Deborah A. Batts